Hemsworth Good morning, Your Honors, and may it please the Court, James Suttoth on behalf of the appellate, Mr. Steven Katz. Your Honors, in this case, the lion's share of my argument, as well as the lion's share of the District Court, hinged its opinion upon the issue of waiver, and so I am going to spend the majority of my argument talking about the issue of waiver, but before I turn to waiver, I do think it's important for me to briefly make a point on, this case came before the Court in terms of a motion for summary judgment, and in one of the most glaring, I think, errors, though the vast majority of the District Court, again, did not reach a lot of the fact disputes in this case because of the issue of waiver, one of the areas where they did actually reach one of the fact disputes, because this is an age discrimination case, was in the issue of the key decision maker in this case, Lieutenant Colonel Brian Adams. Brian Adams makes a comment in his deposition that, and just as a brief background, Your Honors, that this is occurring out of Fort Polk, now Fort Johnson, at the Army Community Hospital out there, you may hear me refer to it as BJAC, it's the Bain Jones Army Community Hospital. Out at the Bain Jones Army Community Hospital, there are two surgeons there. In this case, Brian Adams is implementing what they call a helose reset, H-E-L-O-S, a helose reset. We have always contended that the helose reset was simply pretext for actually implementing age discrimination. However, it became crystal clear during the deposition of Colonel Adams, because in that testimony, Lieutenant Colonel Adams finally admits that the helose reset did not actually mandate that Dr. Steven Katz be removed from his position as someone younger placed into his spot. Previously, that had always been the argument. We had to do this because of helose. It changed in the deposition, and finally we hear in the deposition that the real reason was he had a desire to place someone younger, and use that word, a younger military officer into that position. Now, the district court, when they dispensed with the word young, did so by essentially stating that, well, there are two interpretations of the word young. Young could be viewed as age. Young could also be viewed in terms of experience. The district court adopted the interpretation actually most opposed to the non-moving party. They adopted the interpretation most contrary to Dr. Steven Katz. They adopted the interpretation that young, in this case, must have meant experience. Though Mr. Adams, or Colonel Adams, never expressly stated that that's what he intended by the word young, the district court insinuated or concluded that must have been their intent. That was one of the most glaring examples of constrained facts against the non-movement. I think it's important for your honors to know that, that in this case, it is riddled with fact disputes, but I do realize that we've got to get past the issue of waiver to get to a lot of those fact disputes, and so now I want to turn to the issue of waiver. In this case, Dr. Steven Katz does make his ultimate contact with the EEO, the internal agency for the Army, after 45 days, and the Army's thrust of their argument, at least finally at the district court, was, well, if you did not appear within 45 days, you've waived that. I think the fundamental problem in this case has been a misinterpretation or a misconstruction of this court's line of jurisprudence regarding waiver, and if I can, just briefly, we start with the Huntley case, which is the first time that this circuit holds that, in fact, because it's not jurisdictional, this 45 days is subject to waiver, tolling, estoppel, etc., and so Huntley comes up with the broad principle that, well, we will allow waiver if the agency, quote, acts on it. Now the Oaxaca case is the first time that that's sort of tailored back, that's brought back somewhat by this court to say, just because an agency acts on it, doesn't mean it's an automatic. So just because you receive the complaint, you docket the complaint, you accept the complaint, even if you investigate the complaint, that's not going to be enough. We're not going to allow you an automatic extension. Okay, fair enough as it goes. It finally moves to DeMuno's case, and DeMuno's case is dealing with the agency of the Air Force, and DeMuno's case, I think, is where this line of jurisprudence currently leaves us. DeMuno's case adopts Huntley and says, fine, if you accept it and you act on it, it accepts the tailor back of Oaxaca that, well, it can't be automatic, but here's what DeMuno says. If you accept it, if you act upon it, that may not be enough under Oaxaca, but you have to do, quote, a good deal more, and that becomes our standard. What is, quote, a good deal more? Now, in DeMuno's case, what was, quote, a good deal more was that in that case, the EEO had actually made an express finding that the internal agency, the EEO, the internal agency for the Air Force had made an express finding that the complaint was timely, so it almost became a judicially a stop from changing your position argument that at one point in time it was found to be timely, now all of a sudden the argument's being made by the agency that it's untimely. But in DeMuno's case, they never at any point in time expressly stated that the only way, the only way by which you can have waiver is an express finding of timeliness. What they said was you have to have, quote, a good deal more, and the question became in DeMuno's, well, what are the facts of DeMuno's case that constitute a good deal more, and that was the finding of timeliness. Where I think this sort of goes off the rails in this line or progeny of cases is the Roe case, Roe v. Sullivan. The Roe case is cited to, and by the way, all of the companion string sites of cases that my colleague on the other side is going to cite to, Werner, Reveless, Adams, Daniels, Molina, all of these cases, they cite to Roe. Their underlying . . . I agree with you that it went off the rails at Roe and that our progeny is wrong and that the Seventh Circuit is right. Even if we agree with all of that, how can we help you today, sir? Because we have to follow our rule of orderliness, and those are published cases, Munoz and Roe, even if these other ones, Werner and Reveless are not, I don't think, so don't . . . aren't we stuck? Are you trying to make an argument that you want to save for en banc or something? No, I'm not trying to save for en banc because I don't think that I'm stuck with Munoz because Munoz . . . in fact, I was going to say that Munoz is my best case with the Fifth Circuit because it is a published opinion, and what Munoz holds is that there is no holding inside of Munoz that you must have an express finding of timeliness. What Munoz says is a good deal more, and so I don't think this court is deviating from its rule of orderliness whenever it says, under the facts of the Katz case, here's what we have. We have an individual who ostensibly the complaint is after the forty-five days, but the EEO for the Army dockets that complaint, they accept it, they investigate it. Whenever Judge Rung, the Administrative Law Judge, whenever he issues his pre-trial order and scheduling order and discovery deadlines, the parties agree . . . I get the . . . I'm sorry, I just . . . go ahead and finish your slide. Okay, sorry. Thank you, Judge. The parties agree to accepting two claims, none of which were timeliness. Timeliness was never urged at the lower court. Even when we get to the district court, timeliness is never raised even in a 12B6 motion to dismiss. Finally, the case is fully litigated into a motion for summary judgment. At the motion for summary judgment stage, that's when, at the first time, the issue of timeliness is ever raised. And so my position, Your Honor, is that under Munoz, there has been, quote, a good deal more. There has been far more than just acceptance and docketing by the EEO office, but rather . . . The court doesn't do this good deal more. It just says you must have a specific finding that the claimant's submission was timely. I'll do respect, Your Honor. I disagree. Munoz . . . Disagree with Roe? Or you're disagreeing with my reading of Roe? I'm reading directly from Roe. I'm sorry. I thought you said Munoz. No. Roe. Roe does say that, yes. Roe says that. We're stuck with Roe, aren't we? Respectfully, no. Actually, we're not. We're not. And here's why. This is the problem with Roe.  He is an attorney, actually, who had defended the government in these kind of Title VII cases in the past. The court did not want to extend to him equitable stop or tolling because he was deemed to be a sophisticated and learned party. But the issue with Mr. Roe was, after the EEOC had done its entire process for the internal agency, the EEO, because in Roe's case, he was with the Health . . . yeah, HHS, Health and Human Services Department. That was his agency. It was HHS. When he files his motion to reconsider, not talking about the original complaint to the commission, to the EEOC commission, when he does that, he doesn't do that particular request timely. He does it after the 30-day mark. I'm not talking about the original 45 days necessary to initiate your internal complaint. What he submitted was a request for reconsideration to the commission, to a third-party tribunal. And this is the problem. Every single case has been citing Roe sort of blithely without looking at the facts of Roe. There is a distinction between the agency employer in these federal sector cases. The agency employer is either the Air Force, the Army, the HHS, the VA, whatever it is. The EEOC is viewed as the commission. Even the implementing regulations, the statutes, 29 CFR 1614.105, all of these CFRs talk about the difference between the agency or the commission. There is a separation between the internal agency process, the EEO, and the EEOC, which is acting as a third-party commission. And that makes sense as a practical standpoint that a third-party commission, a third-party tribunal would not in any way be in a position to waive the rights or waive the defense of a defendant of an agency. In fact, part of Roe's argument that I think practically was a struggle was that if the EEOC had adopted Roe's argument, Roe's argument was essentially, well, the minute the tribunal, the minute the commission docketed my request, it somehow accepted my request. Well, we can see through how that doesn't make sense because under Roe's argument, I guess the EEOC was supposed to throw in the trash his reconsideration motion and not even docket it. Instead, what the EEOC did was they simply docketed it and they denied it because it was late. It was after the 30 days. Assuming, arguendo, that we don't agree with your distinction of Roe, even if it has intuitive appeal. Just assuming, arguendo, what claims do you believe survive and should you win on? Assuming, arguendo, that we do get past the waiver, I think there are, well, first of all, I'll say we voluntarily dismissed the religious claim. After doing discovery in the case, we felt it became clear that . . . But you don't get past the waiver issue. What claims still are here? You have some claims that are okay, don't you? Your Honor, I'll double check myself when I come back up . . . Do you think you lose the whole case? I think that we lose the entire case if we lose all waiver, yes. Do you think you lose retaliation, constructive discharge? Well, there is a caveat to that, Judge Willard, thank you. As to the issue of the retaliation, the constructive discharge, one of the issues there is that we get into the continuing violation doctrine, and so I don't think that I lose on the waiver issue, because in the particular facts of that case, Dr. Katz's summary suspension, his abeyance is supposed to last for a period of thirty days. One of the other doctors on site at BJAC was Dr. Isaiah. He went through the same process Dr. Katz did, Dr. Isaiah's lasted thirty days. They hired an internal investigative agency or officer, an I.O. That I.O. came back and said everything is fine, Dr. Isaiah was reinstated. Dr. Katz went through an I.O. That I.O. came back and said everything is fine, Dr. Katz is not reinstated. Instead, what the panel does is they then find new allegations to bring against Dr. Katz, and this time they elevate it, or they send it back to the I.O. He comes back once again, says everything is fine. At that point in time, the panel at BJAC is still not satisfied, they send him to a peer review panel. That peer review panel, while it is still out, ultimately it comes back and says everything is fine, but at this point, despite two I.O.s and a peer review panel, now spending a period of years that he's been under summary suspension, can't practice as a surgeon, Dr. Katz, again for summary judgment purposes, is, you know, constrained and most favorable to Dr. Katz. He testifies he had a conversation with leadership where they threatened to report him to the data bank if he did not quit. The data bank, I didn't know what it was, so if your honors are not familiar with what it is, the data bank is absolutely devastating if you're a surgeon. It's what any prospective employer looks at. If you have sort of a mention in the data bank, it might as well be considered malpractice, a scarlet letter on that surgeon. The last thing they want to do is be in a data bank, it desperately can hinder their career. When the threat comes to go to the data bank, he finally quits. So we think that any reasonable person in Dr. Katz's position, a jury would find that is a constructive discharge. It is not until after Dr. Katz feels as though he has no choice but to resign, he does resign. It is after his resignation that the panel finally reinstates his privileges. But in no point in time during his entire employment there did they ever reinstate his privileges despite what we saw happening at the exact same parallel time with Dr. Isaiah. And so under the continuing violation doctrine, I do think that I get past the waiver issue because of the fact that the time delay would run and you look at the Vidal versus Chertoff case. It's an EEOC complaint. Why isn't that good enough for your retaliation constructive discharge claim? Why isn't that wasn't exhausted appropriately in that? And it's not untimely. And so why isn't that a viable claim? This is actually a friendly question. It is a friendly question and I would happen to agree with Your Honor.       I think it's a good question. I think it's a good question. I think it's a good question. No. So what's the answer? Well, I do. So I do think that the EEOC claim that we presented does save our claims. In fact, we did talk about that to the district court in the case of, let me make sure I cite it correctly, the Monkis versus Johans case. In the Monkis case, we talked about that and we thought that was enough to get us past this. The district court disagreed and found everything on waiver. We think that we actually do get past without having to get into waiver. Thank you. Thank you, Judge. If you don't mind, can you start with those that don't allegedly affect the waiver? Yes, ma'am. Thank you. How are you? I'm nervous, ma'am. It's okay. Take a deep breath. We get through this. My name is Annette Perry and I represent the Secretary of the Army. So I'm going to get past. The big thing is none of the plaintiff's arguments excuse his failure to timely exhaust his claims. So we'll shoot past the removal of the supervisory duties and the abeyance, as both of those are clearly outside of the 45 days and I think that the precedent is pretty clear that those weren't timely exhausted. But it's the same for his retaliation claim. So I'll focus there. I don't want you to get off, so if you want to start somewhere else, you start where you want to start. I'll start a continuing violation doctrine. The district court properly rejected the argument that the delayed investigation caused the abeyance and continued suspension of Katz's privileges did not constitute a continuing violation. Discreet acts, which he includes the removal and the abeyance, they must be exhausted under Morgan within 45 days. Katz's contention that the investigation was unreasonably delayed is unsupported by the record evidence.  In August of 2018, both Dr. Katz and Dr. Isaiah's clinical privileges were placed in abeyance in August of 2018. Both converted summary suspensions in September of 2018. On October 10th, the credentialing committee met and they discussed both the IA findings for Dr. Katz and for Dr. Isaiah. By that point, Colonel Adams, the alleged discriminator, he had already recused himself from the credentials committee, so he was not even in this meeting. It was brought up additional allegations that had been found in a separate investigation within the Department of Surgery and they asked the investigator if he had looked into those matters. He said he had not, so he went back and looked at those. It was determined when he came back that peer review was necessary, that they couldn't do it from physician. They had to find a board, a panel outside of BJAC because these were the only two general surgeons that they had. That's what took the time. They're making a big deal about that the peer review panel found that Dr. Katz's privileges should be reinstated in December, but they didn't reinstate them until after he resigned. That's simply not true. They did meet, but if you look at their actual, if you look at their actual recommendation, they didn't sign it until mid-January and by that point, and then they submitted it back to BJAC leadership to make a decision. Dr. Katz had already resigned by that point. The record clearly shows that after they received the findings within two weeks, his privileges were reinstated. Dr. Katz has not showed, bottom line, he has presented no substantial evidence to support his claim that there was a delay in the investigation. Can you tell us why the EEO complaint is not satisfactory? Because we don't require a check the box. If it's detailed in what the allegations are, especially after the Fort Bend County case with everything being, you know, it's not, it's mandatory but not jurisdictional and we're not, we're not, why isn't it good enough? Because he doesn't allege any claims of retaliation, anything that could be construed as retaliation in either the December 28, 2018 EEO complaint or the plaintiffs have characterized it as retaliation. Clarification, it's actually, the fourth, it's listed as the fourth page of the EEO complaint and it's the response to the claimed relief and neither one of those, and according to plaintiff, I don't know how to verify it, but according to plaintiff, it was submitted on January 3rd, which was the day after he was terminated. There's no mention of an alleged threat. There's no mention of retaliation in either of those documents and furthermore, on January 10th, the EEO office sent a notice of accepted claims and they only included the removal of the supervisory duties and the clinical abeyance as the listed claims before them and plaintiff was given five days, it instructed him if within five days he didn't, if he didn't agree with the way that they framed his issues, he had five days to tell them so and he didn't and he was represented by counsel at that time. So I think that between those three documents, it's undisputed that he did not exhaust his retaliation claim. Would you like to address whether Roe controls the situation without, where it's a third party administrator like the EEOC, I mean a third party agency versus the agency where the action is occurring, that distinction that's being made? I don't think there is any distinction, Your Honor. Well, does the Seventh Circuit make that distinction? The Seventh Circuit does, but we rejected that in Adams v. Potter. Who's he? The Fifth Circuit, I'm sorry. This circuit, they rejected that in Adams v. Potter even though it was an Eastern District, Louisiana case in 2005, this court affirmed that decision and it's directly on point with this case. It was a postal worker. He went through administrative process. The EEOC administrative judge rendered a decision finding that he did not . . . Is that a published opinion where we say . . . It is not. Okay. Well, given that we don't have to follow the unpublished opinions under the way our rule of orderliness works, what is the right answer? The right answer, Your Honor, is that at the administrative level, an employee should be given the benefit of the doubt and a thorough investigation should be done. That was the intent of the Civil Service Reform Act and an open and fair investigation into the claims. If the court were to require that at the administrative level for the agency to make that determination, viable claims could be lost in the process. Okay. You think that's a result of the Seventh Circuit approach? I think it's possible, ma'am. Do you know of any other circuits that handle this any other way? The Lord case out of the Sixth Circuit, if all of the claims would be dismissed anyway, but if you don't bring up the timeliness argument at the administrative level, so it's a little bit . . . I think if Lord was the case, it's . . . So would Sixth Circuit then be against this also in this case? Not in this case, Your Honor, because all claims wouldn't have been dismissed. What case wouldn't be dismissed? On the timeliness argument because it wasn't within the forty-five days. I'm not sure, Your Honor. I don't think . . . It may well have disposed all of them. I'm trying to work it through my head if under that standard. Any other circuits that you wish to call out to us? No, Your Honor. The Fifth Circuit has consistently held that that's what the standard is. I think that it's longstanding precedent that plaintiff is asking us . . . that we're asking the court to overrule. Longstanding precedent? Yes, Your Honor. This has been that the timeliness defense is waived only when the agency makes a specific finding which they didn't do in this case. It wasn't addressed at the administrative level. Do you have anything further? There's a couple of things I would like to note. Again, first, plaintiff was represented by counsel. There was some suggestion that he wasn't throughout the administrative process, that the Army didn't bring this up until our summary judgment. Didn't bring up the exhaustion argument until the summary judgment motion, but in fact, throughout the court litigation, beginning with our affirmative defenses and our answer, the Army's position has been that plaintiff failed to timely exhaust these claims. Would you like me to address the younger comments? It's up to you what you want to do with your time. I think we have your argument, but if you want to address something . . . You do. I apologize. The younger comment, if you read it in the context, it was clear. There were two actions here. The first was, while the Army wasn't required under HELOS to change the only civilian department head position at BJAC, from civilian to military, they weren't required to do it, but what did happen is that their department head positions were reduced by half, and this is what we do, right? We train and develop leaders. If you read it in context, what Dr. Adams had said, it's that they needed these positions to groom these young officers for further advancement. I think plaintiff's argument is off point. It's just completely out of context. If you need positions to groom young officers, why isn't that a prima facie case of picking young people over more senior people? Young doesn't necessarily mean you're ma'am young in age. It is intended to be. We commonly refer to our military officers based on rank. Why isn't that a jury issue? Whether you meant young like missionary or young like military? I just don't know if that's your best argument, but that's ... Anyway, anything else? No, ma'am. Okay, thank you. Thank you. Judge Willett and Judge Elrod, let me address what we were talking about whenever we last left off, whether or not I survive regardless of waiver, put row and waiver aside. A few points. First of all, I think that with his formal complaint being filed December 28th, 2018, I think the summary suspension does come back. I think it does survive. Any retaliation, by the way, before the summary suspension, so basically back to the abeyance. Because of the continuing violation doctrine, which I discussed before under Vital versus Chertoff, I think if the summary suspension comes in, then I think any retaliation prior to the summary suspension, meaning related to the abeyance, comes in under Vital versus Chertoff. Finally, let me address retaliation, though, post. Not pre-retaliation, which would be governed by Vital, but post-retaliation after December 28th, 2018. I do think under the GUPTA line of cases, which I think is what Judge Elrod, you were referring to, the Sanchez case is the beautiful language about not requiring it to be for the sophisticated to learn it, but rather it's not so much about checking the box, but what the contents of the allegations are. Under GUPTA, which allows for retaliation to arise post the original forming of the complaint, I think post-retaliation comes in through GUPTA and its progeny. I do want to raise, though, because there was an argument made by my counsel, opposing counsel, that he didn't check the box of reprisal. That is sort of a concern for me. If waiver doesn't happen, and I'm limited to my complaint, then what do you do with the fact that your complaint doesn't specifically check the box of reprisal? As your honors are well aware, there is no formal requirement to simply check the box. It's what can grow out of that investigation. I'd hate to do this to simply read my brief, but I do think it's important on this narrow point that even though after he submitted his complaint, he didn't check the box. He had a follow-up contact with the EEO officer, in this case, Karen Matagi, an email correspondence that he had. This is exactly what the courts envisioned happening. What can, quote, grow out of the charge? You may not check the exact box in your charge, but this is what we expect to happen in this process, the interactive process with the EEO. There's going to be communication between yourself and that officer. My client, Dr. Katz, sends an email to Karen Matagi with the EEO, and he talks about, in detail, his position on how he felt this was retaliatory, and he ends his email with this, quote, In my case, it was retaliatory and meant to be injurious by Adams. Record on Appeal 1637-38. My client, though he may not have checked the box, I do think that retaliation survives because of what grew out of the original charge. Those would be the things, I think, that survive this case if waiver is not granted. As a final point to go back to Roe and the issue of orderliness, to answer your question, Judge Elrod, there is no published opinion in the Fifth Circuit. The Seventh Circuit has the published opinion, which I do think is not only directly analogous and on point, I think it meets all the practical concerns of showing deference to the administrative process, completing the record, and having judicial economy. I don't think that this Court needs to overrule Roe or do anything to Roe. What Roe deals with, it's not a distinction without a difference. It is a major distinction within the CFR between an agency, a federal agency, and a third-party commission or tribunal. For a third-party commission or tribunal to docket a request, to rule on that request, stands on its own. It would be illogical, I think, too far of a leap to say that what a tribunal does, its actions, thereby constitutes a waiver on the part of the agency. That's the argument in Roe that I don't follow, that what a third-party does would somehow impute waiver on the agency. If I want to find a waiver by the Army or a waiver by the agency, I want to look at what the agency itself did, what actions did it take, and in this case, not only did it never raise this to a summary judgment, they are right, they brought up in a boilerplate affirmative defense. But if they really felt as though timeliness was an issue, a 12B6 could have dispensed with this very quickly if they really felt that timeliness was an issue. A final point on what the agency did in this case, there was a brief moment, by the way, and this is in my brief, there's a brief moment at the very beginning of this when Dr. Katz submits his initial, it was after the 45-day mark, he submits his initial complaint, the informal one, and Karen Matagi, with the internal agency, not the EOC, with the internal agency, she actually reaches out to Dr. Katz and she says, why are you outside of the 45 days? And he responds with an email about the fact that, well, he thought he was going to have a union representative, he ended up not getting a union representative, and he wasn't sure through his internal grievance counselor that they have on site, he wasn't sure what the timeliness concerns were, and then she processes it post. Why is this compelling? Because in all of the cases that talk about this waiver issue, they talk about the desire for this is to avoid negligence or inadvertence. We don't want an agency to be bound if they're inadvertent. So for those reasons, we ask that the court be reversed. Thank you, Judge.